| | AUSA: Matthew Roth | Telephone: 313-226-9186 |
|---|---|---|
| AO 106 (Rev. 04/10) Application for a Search Warrant    Special Agent: | Gregory Waterson | Telephone: 313-226-3100 |

# UNITED STATES DISTRICT COURT

for the
Eastern District of Michigan

SEALED MATTER

3D

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
20912 Botsford Drive, Apartment 8
Farmington Hills, Michigan, 48336

)
)
)
)
)
)
)

Case: 2:16-mc-50731
Assigned To : Edmunds, Nancy G.
Assign. Date : 5/18/2016
Description: SEALED MATTER (BG)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the ___Eastern___ District of ___Michigan___, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed.R.Crim.P.41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 641 | Theft of Federal Funds - Public Money, Property, or Records |
| Title 18 U.S.C. Section 1341 | Mail Fraud |

The application is based on these facts:
See attached AFFIDAVIT.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gregory Waterson, Special Agent DOL-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __May 18, 2016__

_____
*Judge's signature*

City and state: __Detroit, Michigan__

Elizabeth A. Stafford, United States Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Gregory Waterson, being duly sworn, depose and state the following:

## **I.  INTRODUCTION**

1.     I am a Special Agent for the United States Department of Labor (DOL), Office of Inspector General (OIG), and have been so employed since December 2015.  Prior to this assignment, for seven years, I was a Special Agent with United States Secret Service (USSS).  I am currently assigned to the Detroit Field Office of the DOL OIG.  I have participated/conducted five separate unemployment insurance investigations.  As an USSS and DOL OIG Special Agent, I have conducted numerous investigations that involved violations of federal law, including violations of Titles 18 and 29 of the United States Code.  I have participated in several criminal investigations involving unemployment insurance (UI) fraud schemes.

2.     Probable cause exists that LEROY CONSTANTINE, CEDRINA HARRIS, and others, have violated Title 18 United States Code, Sections 641 (Theft of Federal Funds - Public Money, Property, or Records), 371 (Conspiracy), 1343 (Wire Fraud), and 1341 (Mail Fraud).

3.     This affidavit is submitted in support of an Application for a Search Warrant to search 20912 Botsford Drive, Apartment 8, Farmington Hills, Michigan, 48336 (SUBJECT PREMISES).

4.     The facts set forth in this affidavit include information I have developed in furtherance of this investigation and information provided by the State of Michigan Unemployment Insurance Agency (MUIA).  Because this affidavit is submitted for the sole purpose of supporting an application for a search warrant, it does not necessarily contain all facts discovered in the course of this investigation.

## II. BACKGROUND

5.     The Social Security Act of 1935 initiated the Federal and State Unemployment Insurance (UI) System.  The system provides benefits to individuals who are unemployed for reasons beyond their control.  The purpose of the UI System is twofold.  First, to lessen the effects of unemployment through cash payments made directly to laid-off workers.  Second, to ensure that the life necessities are met on a weekly basis while the worker seeks employment.  In Michigan, the UI System is administered for the federal government by the Michigan Unemployment Insurance Agency (MUIA).  The United States Department of Labor funds all MUIA administrative costs including salaries, office

expenses, and computer equipment.  UI benefits paid to unemployed workers in

the private sector are financed by taxes on the employers.  When state benefits are

exhausted they are supplemented by federal funds appropriated by the United

States Department of Labor.  A substantial amount of the MUIA funds are directly

derived through the Federal American Recovery and Reinvestment Act,

Emergency Unemployment Compensation (EUC), and/or are otherwise federally

subsidized through the United States Department of Labor.

6.      Normally, a UI claim is initiated by a worker submitting a claim in

person, over the telephone, or on the Internet.  The worker is then required to

contact MUIA every two weeks by telephone or Internet.  The worker must certify

they are still unemployed and actively seeking work.  In order to be eligible for UI

benefits, the worker must demonstrate a certain level of earnings, in several

quarters, preceding the application.  The amount that must be shown depends on a

variety of factors.  These factors include the length of the applicant's previous

employment and the amount of wages earned.  When a UI claim is filed, MUIA

will send a notice of determination to the claimant and all reported employers

through the United States mail.

### III.  SUMMARY OF THE INVESTIGATION

7.      In February of 2016, the MUIA Fraud Division contacted the DOL-OIG.  A single Internet Protocol (IP) address, 162.207.238.8, was identified establishing, accessing, and/or making changes to hundreds of UI claims.  Based on Affiant's training and experience, a single IP address displaying this type of activity is a sign of fraud.

8.      A Regulation Agent, with the State of Michigan UIA Fraud Division, discovered fraudulent UI claims filed with the 162.207.238.8 IP address.  These fraudulent claims were connected to other fraudulent claims that utilized the same postal and e-mail address in filing the claims.  As of April of 2016, the State of Michigan UIA Fraud Division estimated that this fraud scheme was responsible for approximately $152,172.00 in losses to the MUIA.

9.      MUIA determined that the Internet Service Provider (ISP) for IP address 162.207.238.8 was AT&T.  On or about September of 2015, AT&T provided the subscriber information for IP address 162.207.238.8.  The subscriber was identified as Kent Jocque (Jocque).  Jocque's address was the SUBJECT PREMISES.

10.     On or about April of 2016, AT&T returned updated subscriber information that listed the same address for the 162.207.238.8 IP address.  The phone and email contact information for the AT&T account was also updated.  The

associated phone number, xxx-xxx-2945 was used to call into prepaid debit cards where fraudulent UI claims are being deposited.  The associated email is "constantine1985@icloud.com."  CONSTANTINE was born in 1985.

11.    A review of commercial database information revealed that the SUBJECT PREMISES had several possible residents; Jocque, Cedrina HARRIS, and LeRoy CONSTANTINE.  MUIA provided Affiant with the driver's license photos of Jocque, HARRIS, and CONSTANTINE.

12.    On March 23, 2016, Affiant and a Regulation Agent, with the State of Michigan UIA Fraud Division, visited the SUBJECT PREMISES.  Upon entering the complex, Affiant immediately recognized HARRIS from her driver's license photo.  She was standing in front of the open door to the SUBJECT PREMISES. HARRIS provided her name and stated that she resided at the SUBJECT PREMISES for approximately 2 years.  HARRIS was shone a photograph of Jocque, the subscriber of the Internet service at the SUBJECT PREMISES. HARRIS did not recognize Jocque from his driver's license photo and stated that she never saw him before.  HARRIS stated that she lived in the SUBJECT PREMISES with her boyfriend "LeRoy" who lived in the SUBJECT PREMISES for approximately 3 years.

13.     Based on my training and experience, Affiant knows that an individual or individuals involved in filing fraudulent UI claims, via the Internet, often use a stolen identity to subscribe to the Internet service at their residence. This tactic makes it more difficult for investigators to identify them.

14.     On April 11, 2016, Affiant spoke with Jocque.  Jocque has resided in Ann Arbor, Michigan, since 1996.  Jocque does not own or rent an apartment in Farmington Hills, Michigan.  Jocque did not know anyone who lives in Farmington Hills, Michigan.  Jocque has not given permission for anyone to use his identity in order to subscribe to an Internet service.

15.     Based on my training and experience and the information provided by Jocque, CONSTANTINE and/or HARRIS are using Jocque's identity to acquire Internet service at the SUBJECT PREMISES.

16.     In April of 2016, the MUIA Fraud Department provided Affiant with an updated list of UI claims that had been established, accessed, and/or had been changed by the IP address registered to the SUBJECT PREMISES.  Affiant reviewed this information and determined that the IP address had established, accessed, and/or made changes to approximately 288 separate UI claims between August of 2014 and April of 2016.  The IP address accessed these 288 separate claims approximately 1,008 times.  Of these 288 separate claims, approximately 32

were successfully filed.  The total loss amount associated with the 32 successful

fraudulent UI claims was approximately $79,368.00.

17.    In April of 2016, the MUIA Fraud Department determined that three

of the UI claims established, accessed, and/or had been changed by the IP address

registered to the SUBJECT PREMISES, were deposited into accounts associated

with pre-paid debit cards.  These debit cards were issued by AccountNow.

18.    On or about April 15, 2016, AccountNow provided information for

the three accounts.  The information included identifying information related to the

account holder, transactional history, and any phone numbers that had accessed the

account via AccountNow's phone system.  One of the phone numbers that

accessed all three accounts was xxx-xxx-7834.  A commercial database search of

this number showed that it was registered to LeRoy CONSTANTINE.

19.    Based on my training and experience, and based on the training and

experience of others with whom Affiant has spoken, individuals involved in UI

fraud, like CONSTANTINE and/or HARRIS, maintain records, logs, journals,

files, folders, data, memos, correspondence, banking records, UI debit cards,

various receipts, mailings from the MUIA, UI applications, personal identification

numbers (PIN's) for UI debit cards, falsified and/or fictitious identifications, stolen

identity information, tax information, emails, computers, computer files, computer

equipment, computer media, magnetic, electronic or optical storage devices, UI and tax electronic filings, and information regarding a myriad of other related financial and fraudulent documents related to their ongoing UI scheme.

20.     As an example, during this investigation, multiple prepaid debit cards, associated with fraudulent UI claims, were used at various ATM's throughout the Detroit Metropolitan Area.  It is unlikely that the subjects were able to manage numerous debit card PINs by memory.  The subjects would have to maintain a journal to remember which PIN numbers work with which ATM cards, personal identities, and other information related to the claims.  Based on Affiant's training and experience, these types of documents, involved in the fraud, would be maintained at the SUBJECT PREMISES.

21.     Based on Affiant's training and experience:

a.     Subjects engaged in UI fraud schemes maintain the documents utilized in furtherance of the scheme(s) at a close proximity; usually at their personal residence and/or in their vehicles;

b.     UI debit cards can be used for general purchases.  In many instances, subjects engaged in UI fraud maintain their receipts which contain the last four digits of the UI debit card and date it was used;

c.     Subjects engaged in UI fraud are not likely to destroy the fraud documents and information.  The documents and information are difficult and/or expensive to obtain.  The documents are needed, in certain instances, to utilize the UI debit cards or to establish new false claims; and

d.     Subjects engaged in UI fraud are unlikely to destroy the UI debit cards in their possession.  The UI debit cards have a relatively constant and continuing financial value.

22.     Through fraudulent UI claim reviews, it is evident that computers are used to facilitate a portion of the fraudulent UI benefit scheme.  According to the State of Michigan UIA, almost all UI claims are currently filed via the Internet.  Based on Affiant's training and experience, most subjects engaged in medium to large scale UI fraud, like the fraud described herein, utilize fictitious or fraudulent documents.  The subjects use their own computer to keep their scheme secret.  These computers are frequently secured at their personal residence.

## IV.  COMPUTER AND ELECTRONIC STORAGE DEVICES

23.     Based on Affiant's training and experience, and in consultation with Special Agents trained in computer forensics, computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects:

a.       The objects themselves may be instrumentalities, fruits or evidence of crime; and/or

b.       The objects may have been used to collect and store information related to the crimes (in the form of electronic data).

24.     Computers and computer storage devices store the equivalent of thousands of pages of information.  The user can store files in various locations and create deceptive file names to hide the true nature of the information contained within the files.  Consequently, computer forensic examiners must examine all the stored data to determine whether it falls within the purview of the search warrant. This sorting process can take weeks or months, depending on the volume of the data stored, and it would be impractical to attempt this kind of data search on site.

25.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  This is almost always true because of the following two reasons:

a.       Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.

Page **10** of **15**

The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis; and

b.     In order to fully retrieve data from a computer system, the computer forensic examiner needs all magnetic storage devices as well as the central processing unit (CPU). In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

26.     Because almost all UI claims are currently filed via the Internet, there is probable cause to believe that the computer(s) and its storage and/or peripheral devices are all instrumentalities of crimes. As a result, they should all be seized as such.

27.     The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a.     On-site triage of computer systems to determine what, if any, peripheral devices or digital storage units have been connected to such computer systems, as well as a preliminary scan of image files contained on such systems and digital storage devices to help identify any other relevant evidence;

b.     Examination of all of the data contained in such computer hardware, computer software, or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

c.     Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

      d.     Surveying various file directories and the individual files they contain;

      e.     Opening files in order to determine their contents;

      f.     Scanning storage areas;

      g.     Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and

      h.     Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## V.  CONCLUSION

28.    Probable cause exists to believe that LeRoy CONSTANTINE and/or Cedrina HARRIS, and others conspired with known and unknown participants, in furtherance of a scheme to defraud or steal funds of the United States of America, in excess of $1000.00, and that in furtherance of this scheme they used, in part, the United States Postal Service.

29.    Probable cause exists that the premises located 20912 Botsford Drive, Apartment 8, Farmington Hills, Michigan, 48336, Eastern District of Michigan, and any vehicles that can be associated with CONSTANTINE or HARRIS, contain computers, computer equipment, storage devices, records, documents, financial

instrumentalities, and files which represent evidence, fruits and/or instrumentalities

of the involvement of LeRoy CONSTANTINE and/or Cedrina HARRIS, and

others in violation of Title 18, United States Code, Sections 371, 641, and 1341.

30.     Affiant seeks permission to search any and all vehicles registered to or

associated with the SUBJECT PREMISES, CONSTANTINE, or HARRIS.

Affiant is aware of one vehicle registered to the SUBJECT PREMISES.  Based on

Affiant's training and experience, Affiant knows that evidence, related to UI

investigations, has been found in vehicles connected to targets of UI fraud.

Individuals that commit UI fraud use their vehicles to travel to ATM's, banks, and

various retail stores that have ATM's inside the business to withdraw money from

the UI ATM card.  As a result, receipts, ATM cards, and journals (to record the

ATM personal identification numbers for each ATM card and amount of money

withdrawn on individual cards) have been found in a target's vehicle(s).  An

individual receiving UI can only withdraw approximately $724 a week from an

ATM card.  Consequently, individuals participating in UI fraud will maintain

journals of how much they have withdrawn from each card.  Affiant has found

these records/journals stored in vehicles of individuals who were targets in UI

fraud investigations.

Page **14** of **15**

31.     Probable cause exists that CONSTANTINE and/or HARRIS are receiving UI benefits to which they have no legal entitlement.  Evidence related to their criminal conduct, such as notes, accounting summaries, financial documents, journals/logs, debit cards, ID's, is located at the SUBJECT PREMISES or vehicles associated with the SUBJECT PREMISES, CONSTANTINE, or HARRIS, and will serve as evidence of their involvement in the aforementioned UI scheme.

32.     Affiant respectfully requests that a search warrant be issued for the SUBJECT PREMISES (Attachment A) and vehicles associated with the SUBJECT PREMISES, CONSTANTINE, or HARRIS, and to search for the items specified under Attachment B.

GREGORY D WATERSON
Special Agent, DOL/OIG

Sworn and subscribed to before me
on this 18th day of May 2016

ELIZABETH A. STAFFORD
UNITED STATES MAGISTRATE JUDGE

Page **15** of **15**

## **ATTACHMENT A**

### **LOCATIONS TO BE SEARCHED AND DESCRIPTION OF PREMISES**

The location to be searched is:  20912 Botsford Drive, Apartment 8,

Farmington Hills, Michigan, 48336.  The residence is located in a two level,

colonial style, multi-unit structure primarily constructed of gray brick and mortar

with black shingles.  The multi-unit structure is one of several similar structures

that make up the House of Botsford apartment complex.  The multi-unit structure

housing the 20912 Botsford Drive addresses also houses the 20906 Botsford Drive.

addresses.  The 20912 Botsford Drive addresses makes up the southern half of the

multi-unit structure.  The west side entrance/exit (E/E) to 20912 Botsford Drive is

marked with the solid black colored individual numbers "20912" affixed vertically

on the left side of the covered porch.  Apartment 8 is located on the second level

on the northwest side of the 20912 multi-unit structure.  Apartment 8's door is

located on the northwest side of the second floor landing and appears to be

constructed of wood.  Apartment 8's door is identified with a gold colored number

"8" in the middle of the door.  See photos below for further details.








## **ATTACHMENT B**

### **ITEMS TO BE SEIZED**

The search will be for evidence of violations of 18 U.S.C. §§ 371, 641, 1343 and 1341.

1.      Based upon my training, experience and information obtained during the investigation, such items to be seized may include, but are not limited to:

a.      Any and all records, documents and communications of  LeRoy CONSTANTINE and/or Cedrina HARRIS that are relating to evidence, fruits and/or instrumentalities of an unemployment insurance fraud scheme, including logs, journals, payment data, ledgers, tally sheets, receipts, files, folders, tax information, date books, falsified, fictitious and/or stolen  identifications, personal identification numbers, debit cards, unemployment insurance mailings and/or applications, information and documents regarding or dealing with fictitious employers, memoranda, correspondence, and banking records.  As used above and herein, the terms "records" and "documents" include all the foregoing items of evidence in whatever form and by whatever means they may have been created, modified, or stored.

b.      Any and all records, documents and communications pertaining to falsified, fictitious and/or stolen identifications related to an unemployment insurance fraud scheme, including but not limited to those related to

i.      Any and all correspondence or mailings to/from the Michigan Unemployment Insurance Agency;

ii.      Any and all records, documents and communications related to debit cards issued with respect to unemployment claims made with the Michigan Unemployment Insurance Agency;

iii.      Any and all records, documents and communications relating to unemployment insurance applications or claims related in any way to any fictitious employer;

iv.      Any and all records, documents and communications relating to the identities (names, social security numbers, dates of birth, addresses, etc.) of UI claimants;

v.      Any and all records, documents or correspondence relating to prepaid debit cards; and

vi.      Computers, computer hardware or computer related equipment capable of storing information in electronic, optical or magnetic format including but not limited to laptop computers, desktop computers, notebook computers, hard drives, central processing units, internal and peripheral storage devices, CD-ROMs, thumb drives, floppy disks and diskettes, fixed disks, tapes, smart cards, memory cards, memory sticks, cellular telephones, blackberries, electronic dialers, electronic notebooks,

PDAs and passwords, password files, test keys, data security, encryption devices, keys or codes, physical keys, or dongles used to access the devices or used to access the computers to be searched or to convert any data, file or information on the computers/devices to a readable format. Any and all electronically stored communications such as e-mail and text messages. Peripheral input/output devices (including but not limited to keyboards, printers, docking stations, video display monitors and related communication devices such as cables and connections). Computer equipment capable of printing, copying, or scanning documents or identifications, including but not limited to printers, scanners, copy machines, ink cartridges, toners and drivers for the equipment. Any software, documentation, operating logs, instruction manuals, used to facilitate direct or indirect communication with the computers and devices to be searched. All of the above will be seized for an off-site search for information, records, files, documents, photographs, e-mails, text messages and

communications related to the unemployment insurance

fraud scheme and/or the offenses identified above.

SEALED MATTER

AUSA:   Matthew Roth, 313-226-9186
Special Agent: Gregory Waterson, 313-226-3100

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
20912 Botsford Drive, Apartment 8 )
Farmington Hills, Michigan, 48336 )
)

Case: 2:16-mc-50731
Assigned To : Edmunds, Nancy G.
Assign. Date : 5/18/2016
Description: SEALED MATTER (BG)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____
*(identify the person or describe the property to be searched and give its location)* :

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal   *(identify the person or describe the property to be seized)*

See Attachment B.

**YOU ARE COMMANDED**     to execute this warrant on or before _____ June 1, 2016 _____ (not to exceed 14 days)
✓ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   the presiding United States Magistrate Judge on duty .
*(United States Magistrate Judge)*

Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   May 18, 2016   9:45 am

City and state:   Detroit, Michigan

*Judge's signature*

Elizabeth A. Stafford, United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence
of :

Inventory of the property taken and name of any person(s)
seized:

| Certification |
|---|

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to
the designated judge.


Date:  _____                    _____
                                                                                                *Executing officer's signature*

                                                                              _____
                                                                                                *Printed name and title*

## **ATTACHMENT A**

## **LOCATIONS TO BE SEARCHED AND DESCRIPTION OF PREMISES**

The location to be searched is:  20912 Botsford Drive, Apartment 8, Farmington Hills, Michigan, 48336.  The residence is located in a two level, colonial style, multi-unit structure primarily constructed of gray brick and mortar with black shingles.  The multi-unit structure is one of several similar structures that make up the House of Botsford apartment complex.  The multi-unit structure housing the 20912 Botsford Drive addresses also houses the 20906 Botsford Drive. addresses.  The 20912 Botsford Drive addresses makes up the southern half of the multi-unit structure.  The west side entrance/exit (E/E) to 20912 Botsford Drive is marked with the solid black colored individual numbers "20912" affixed vertically on the left side of the covered porch.  Apartment 8 is located on the second level on the northwest side of the 20912 multi-unit structure.  Apartment 8's door is located on the northwest side of the second floor landing and appears to be constructed of wood.  Apartment 8's door is identified with a gold colored number "8" in the middle of the door.  See photos below for further details.








## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

The search will be for evidence of violations of 18 U.S.C. §§ 371, 641, 1343 and 1341.

1.     Based upon my training, experience and information obtained during the investigation, such items to be seized may include, but are not limited to:

      a.     Any and all records, documents and communications of  LeRoy CONSTANTINE and/or Cedrina HARRIS that are relating to evidence, fruits and/or instrumentalities of an unemployment insurance fraud scheme, including logs, journals, payment data, ledgers, tally sheets, receipts, files, folders, tax information, date books, falsified, fictitious and/or stolen  identifications, personal identification numbers, debit cards, unemployment insurance mailings and/or applications, information and documents regarding or dealing with fictitious employers, memoranda, correspondence, and banking records.  As used above and herein, the terms "records" and "documents" include all the foregoing items of evidence in whatever form and by whatever means they may have been created, modified, or stored.

      b.     Any and all records, documents and communications pertaining to falsified, fictitious and/or stolen identifications related to an unemployment insurance fraud scheme, including but not limited to those related to

            i.     Any and all correspondence or mailings to/from the Michigan Unemployment Insurance Agency;

ii.      Any and all records, documents and communications related to debit cards issued with respect to unemployment claims made with the Michigan Unemployment Insurance Agency;

iii.      Any and all records, documents and communications relating to unemployment insurance applications or claims related in any way to any fictitious employer;

iv.      Any and all records, documents and communications relating to the identities (names, social security numbers, dates of birth, addresses, etc.) of UI claimants;

v.      Any and all records, documents or correspondence relating to prepaid debit cards; and

vi.      Computers, computer hardware or computer related equipment capable of storing information in electronic, optical or magnetic format including but not limited to laptop computers, desktop computers, notebook computers, hard drives, central processing units, internal and peripheral storage devices, CD-ROMs, thumb drives, floppy disks and diskettes, fixed disks, tapes, smart cards, memory cards, memory sticks, cellular telephones, blackberries, electronic dialers, electronic notebooks,

PDAs and passwords, password files, test keys, data security, encryption devices, keys or codes, physical keys, or dongles used to access the devices or used to access the computers to be searched or to convert any data, file or information on the computers/devices to a readable format.  Any and all electronically stored communications such as e-mail and text messages. Peripheral input/output devices (including but not limited to keyboards, printers, docking stations, video display monitors and related communication devices such as cables and connections).  Computer equipment capable of printing, copying, or scanning documents or identifications, including but not limited to printers, scanners, copy machines, ink cartridges, toners and drivers for the equipment.  Any software, documentation, operating logs, instruction manuals, used to facilitate direct or indirect communication with the computers and devices to be searched.  All of the above will be seized for an off-site search for information, records, files, documents, photographs, e-mails, text messages and

communications related to the unemployment insurance fraud scheme and/or the offenses identified above.